F. N. McVAY, Appellee, v. WESTERN GRAIN DEALERS FIRE INSURANCE COMPANY, Appellant.

No. 42275.

FEBRUARY 13, 1934.

REHEARING DENIED JUNE 23, 1934.

Sampson & Dillon, and J. H. Johnson, for appellant.

C. B. Hextell, and Homer Lyon, for appellee.

ANDERSON, J.—This is an action on an insurance policy for a fire loss on a stock of merchandise in Marysville, Iowa. There is no question about the issuance of the insurance policy, and its assignment to the plaintiff; such assignment having been approved by the defendant company. A fire occurred on the 23d day of December, 1931, and the insured property was totally destroyed. Sufficient notice and proof of loss was furnished the defendant company.

The policy in suit contained the following provisions:

"This policy shall be void if the insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof: * * *

"(d) If the interest of the insured be other than unconditional and sole ownership; or * * *

"(f) If any change other than by death of the insured, whether by legal proceedings, judgment, voluntary act of the insured or otherwise, take place in the interest, title, possession or use of the subject of insurance, if such change in the possession or use makes the risk more hazardous * * *."

The defendant contends that there was a violation of the quoted provisions of the policy, and that the policy was therefore void at the time of the fire. The appellant specifically pleading and contending that at the time the insurance policy was assigned to the plaintiff-appellee, he was not the sole owner of the property covered by the policy; and that later such a change took place in the interest, title, possession, and use of the insured property, that it voided the policy. There is no claim made by defendant that the alleged change in the interest, title, possession, or use of the property made the risk more hazardous.

The plaintiff-appellee, F. N. McVay, exchanged some equity in farm lands, which he owned, for the stock of merchandise in ques-

tion, on or about the 21st day of August, 1931, and went into possession of the stock of merchandise and continued to operate the same until December 23, 1931, when the stock was completely destroyed by fire. The value of the stock was variously estimated at from $6,250 to $7,500. At the time plaintiff acquired the stock of merchandise the former owner executed and delivered to the plaintiff, F. N. McVay, a bill of sale, transferring the said stock of merchandise to the said F. N. McVay, which bill of sale was duly recorded. At the time of the fire there were three policies of insurance covering the merchandise, aggregating $6,000. The defendant's policy was for $2,000, or one-third of the total insurance. The loss under the policies other than that of defendant was paid by the companies issuing them. Soon after the plaintiff took possession of the stock of merchandise, he assumed the trade-name of McVay & Co., and the business was apparently run under such trade-name until the date of the fire. About the same time plaintiff signed statements, which were prepared by some one other than himself, to the Bradstreet & Dunn Commercial Agencies, containing statements to the effect that the partnership consisted of himself, F. N. McVay, and his wife, Bessie McVay, and the defendant company claims that such statements are evidence and proof of the fact that the plaintiff was not the unconditional and sole owner of the merchandise at the time the policy in suit was assigned to him. The further fact appears that on September 26, 1931, the plaintiff executed a bill of sale which, by its terms, transferred and conveyed to his wife, Bessie McVay, the stock of merchandise in question. It also appears that subsequently and prior to the date of the fire, Bessie McVay executed a bill of sale to her husband, F. N. McVay, reconveying to him the said stock of merchandise. And defendant contends that such transfer by the plaintiff to his wife was a change in the interest, title, possession, and use of the insured property, and invalidated the insurance policy.

The undisputed facts relative to the execution of these bills of sale disclose that Bessie McVay, the wife of the plaintiff, had no interest in the farm lands which were exchanged for the stock of merchandise; that she paid no consideration to her husband for the execution of the bill of sale; that she did not know of the execution of the bill of sale to her until it was recorded by her husband and returned to him; that no consideration passed at the time of the execution of the second bill of sale from Bessie McVay reconveying

the record title of the merchandise to her husband; that there was in fact no change in the interest, title, possession, or use of the stock of merchandise by reason of the execution of the bills of sale. The store was operated at all times by the plaintiff, his wife assisting him as a clerk and perhaps as a bookkeeper. The bank accounts were carried in the name of the plaintiff or the trade-name assumed by him, and no change occurred in such accounts. Checks were signed either by the plaintiff himself or by his wife in his name, adding the letter (B) to such checks as she signed. Both the plaintiff and his wife testified positively that the plaintiff was at all times the unconditional and sole owner of the stock of merchandise; both testifying that Mrs. McVay at no time had any financial interest in the store or stock of merchandise, and that she was just a helper to her husband. And when in cross-examination she was asked the purpose of the reconveyance to her husband of the property, she answered that she had no interest in the property, and the purpose was to convey it back to him like it always was because it was his. There was no testimony, other than we have indicated, challenging or controverting the testimony of the plaintiff and his wife in reference to the ownership of the stock of merchandise. It does appear that the plaintiff, McVay, was somewhat exercised over the possibility that he might be sued upon some taxes or interest items maturing upon mortgages upon the land which he had conveyed in exchange for the stock of merchandise, and that he called upon an attorney explaining the situation, and that the attorney advised the execution of the bill of sale to his (McVay's) wife. And the plaintiff testifies that after the contingency, which he feared might occur, had passed, the reconveyance from his wife to him was made. We are of the opinion that under the circumstances and facts related, no interest or title in the property was vested in his wife, Bessie McVay, and that the bill of sale was but nominal and colorable, and did not in fact convey or transfer to her any interest in or title to the property involved.

In Beckley v. National Fire Ins. Co., 194 Iowa 1106, 190 N. W. 954, we had the same principle involved as is here under discussion, and in that case we said:

"It is the trend of all our precedents that, when breach of the condition of an insurance policy is predicated by the insurer upon the execution of instruments by the insured affecting the title of the

property either by incumbrance or otherwise, the conditions of the policy thus set up will be construed to refer to valid instruments, and not to a void or colorable one."

In that case a chattel mortgage had been executed by the insured upon the insured property without the wife joining, and we held that if the property was exempt from execution the mortgage would be void, and its execution would constitute no breach of the provisions of the policy.

In Cone v. Insurance Company, 139 Iowa 205, 117 N. W. 307, we had practically the same situation before us as is presented in the case at bar. In that case, after the issuance of the policy and before the fire, the insured executed a warranty deed conveying to his sister the real estate on which the insured buildings were situated, for an express consideration of $3,000. The deed was recorded, and the record title remained in the sister until a short time before the fire. On the same day that the insured conveyed the land to his sister, he executed a mortgage on the same land purporting to secure a note for $2,000, payable to a certain bank. This mortgage was also recorded. The insured told his sister that he desired to place the title to the land in her name for the purpose of avoiding trouble relative to the payment of taxes, and that he would take a conveyance back from her. The deed, while it was recorded, was never delivered to the sister. Shortly after this deed was executed and recorded, the sister executed and delivered a deed to the insured, reconveying the property to him. The same thing was true as to the mortgage to the bank. The bank never had possession of the mortgage, and the plaintiff did not owe it any money. We there said:

"These facts were testified to positively by uncontradicted witnesses, and, aside from the presumption arising from the recitals of the instruments themselves, there is nothing in the record indicating different conditions. * * * It was clearly the intention of the plaintiff and Mrs. Gates that the latter should take and hold the record title for the purpose of assisting the plaintiff to escape a possible lien on the property for taxes, and it was just as clearly their intention that no real change in interest or title should take place by virtue of the transaction. There was therefore no actual diminution of interest or title because the parties did not so intend."

We there held that such transfers, to be available as a defense

to insurance company, must of necessity confer on the grantee something more than a mere paper title, that there must be some change or diminution, and that some right must in fact be conveyed. Continuing in that case, we said:

"It is generally held that the object of the provision against a change in the title or ownership of the insured property is that the insured shall have no greater motive to destroy the property or less interest in protecting it. Citing Ayres v. Insurance Co., 17 Iowa 176. * * * 'But if the real ownership remains the same, if there is no change in the fact of title, but only in the evidence of it, and if this latter change is merely nominal, and not of a nature calculated to increase the motive to burn, or diminish the motive to guard the property from loss by fire, the policy is not violated.' See, also, Ayres v. Home Insurance Co., 21 Iowa 185; Weigen v. Insurance Co., 104 Iowa 410."

In the latter case we held that in order to avoid the policy, the incumbrance or transfer must be valid, not merely nominal. See, also, Olmstead v. Insurance Co., 24 Iowa 503; German Insurance Co. v. Gibe, 162 Ill. 251, 44 N. E. 490; Kyte v. Assurance Co., 144 Mass. 43, 10 N. E. 518; Schloss & Kahn v. Insurance Co., 141 Ala. 566, 37 So. 701, 109 Am. St. Rep. 58.

We find the ruling we have mentioned restated and reaffirmed in the most recent decision of this court in Mosher v. Iowa Mut. Ins. Co., 212 Iowa 85, 235 N. W. 743, opinion written by Mr. Justice Grimm. In that case a conveyance was made by the insured to his daughter. It was never delivered to the daughter. The assured himself recorded it, and after it was recorded, it was returned to and kept in the possession of the insured. The daughter paid nothing for the deed. On the same day that this deed was executed, the daughter executed a deed reconveying the property to the assured. This deed never was recorded, but remained in the possession of the assured. The assured continued to exercise dominion and control over the property as though the deed had never been executed. We reviewed and quoted from the various prior decisions of this court involving like or similar questions, and we there held that there never was a real parting of interest, that the insured at all times remained the real owner of the property, and that the transfer mentioned did not constitute a violation of the terms of the policy.

Complaint is made by the appellant that the instructions of the

court did not properly submit the issues to the jury, that they were partial and prejudicial, unduly emphasized certain testimony of the plaintiff, and were not full and explicit. The defendant requested no instructions. We have carefully read and studied the instructions given the jury by the court, and are of the opinion that they fully and carefully submitted the issues to the jury, and that, taking the instructions as a whole, they are complete and proper, and that defendant's exceptions thereto are not meritorious.

Complaint is also made by the appellant as to the amount of the verdict and as to the manner of submitting the measure of recovery to the jury. We are constrained to hold that under the record the measure of damages or recovery as submitted by the court to the jury was correct, and that the verdict of $1,750 is amply supported by the record.

The appellant has assigned many errors alleged to have been committed during the progress of the trial and the admission of testimony. We have examined all such with care, and without entering upon a detailed discussion of them, we find no error prejudicial to the rights of the defendant upon the issues tendered, under the record. We discover no reason for interfering with the action of the trial court in denying defendant's motions for directed verdict and for new trial. The case is one for affirmance, and it is so ordered. —Affirmed.

CLAUSSEN, C. J., and KINDIG, KINTZINGER, STEVENS, and MITCHELL, JJ., concur.