FRANK N. HORN and GRACE B. HORN, Plaintiffs, Appellees, v. MILWAUKEE MECHANICS INSURANCE Co., Defendant, Appellant, ROSCOE ONEY, Guardian, Defendant and Cross-Petitioner, Appellee.

No. 45069.

1046

FEBRUARY 6, 1940.

Stipp, Perry, Bannister & Starzinger, for appellant.

G. F. Hoffman, for appellees.

O. M. Slaymaker, R. E. Killmar, D. D. Slaymaker, and Dio S. McGinnis, for cross-petitioner, appellee.

STIGER, J.—Milwaukee Mechanics Insurance Company, which will be referred to as appellant, issued a standard Iowa fire insurance policy to plaintiff Frank N. Horn who resides in Leon, Iowa. Defendant guardian holds a mortgage on the insured premises. The case was tried in equity. The trial court found the amount of the loss was $1,200 plus $50 interest and that the sum of $1,045.50 was due the mortgagee Roscoe Oney as guardian and $204.50 was due Frank N. Horn. Decree was entered in harmony with the findings of the court.

Appellant's first proposition is that the policy was void because the title of the insured, Frank N. Horn, was other than

unconditional and sole ownership. The policy contained the following provisions:

"IV. That unless otherwise provided by agreement of this Company, this policy shall be void:

"(d) If the interest of the insured be other than unconditional and sole ownership.

"(e) If the subject of insurance be a building on ground not owned by the insured."

The uncontradicted evidence shows the contract for the purchase of the property was with the plaintiff Frank N. Horn and that he was the grantee in the deed. He and his wife, Grace B. Horn, substituted her name in the deed to enable them to secure a loan on the premises, there being personal taxes against Frank N. Horn. Plaintiff paid the entire purchase price and Mrs. Horn never claimed to be the owner of the property. The title of Mrs. Horn was merely nominal, plaintiff remaining the real owner. There being no change in title in fact, the provision in the policy requiring unconditional sole ownership in the insured was not violated. McVay v. Western Grain Dealers Fire Ins. Co., 218 Iowa 402, 252 N. W. 548; Abraham v. Hartford Fire Ins. Co., 215 Iowa 1, 244 N. W. 675; Mosher v. Iowa Mutual Ins. Co., 212 Iowa 85, 235 N. W. 743; Cone v. Century Fire Ins. Co., 139 Iowa 205, 117 N. W. 307.

Appellant's second proposition is that the amount of the judgment was for more than the loss and damage proven and should be reduced.

Plaintiffs' estimate of the amount necessary to restore the premises is $1,394.64. Appellant's estimate is $770.32.

The trial court disallowed plaintiffs' claim of damages in the sum of $17 for rebuilding 15 feet of chimney and the claim for damages to the foundation of the house in the sum of $25. There is no evidence of plaintiffs' claim for $10 for a new deck roof over the kitchen nor for the item of $50 for painting the outside of the house. The price of 348 yards of plaster should be 50 cents per yard rather than the claim of 65 cents per yard. Deducting the above items from the estimate of plaintiffs leaves the sum of $1,300.34, which in our opinion, fairly represents the amount necessary to restore the premises.

The substantial disagreement between the parties is over

the damage to the plastering and the floors. It was a roof fire and 12,000 gallons of water were poured into the attic. Plaintiffs' evidence is that the water was about 3 inches deep on the floors of the first and second stories and poured down the side walls and the sewer was opened to let the water out of the basement. All of plaintiffs' witnesses testified that all of the plaster on the ceilings and side walls was soaked, and would have to be replaced, which would require 348 yards of plaster. The plaster was in good condition before the fire, and, according to plaintiffs' evidence, would last during the lifetime of the house.

Appellant's witnesses, who examined the condition of the house after the fire, testified that the plaster was old lime plaster, deteriorated by age and was soft. They admitted there was nothing but the floors and baseboards to prevent water from going down the side walls and that all of the ceilings and part of the side walls would have to be plastered and that 190 yards of plaster would be necessary.

With reference to the floors, plaintiffs' evidence shows that they were in good condition before the fire and due to the water all the floors with the exception of two rooms are bulged, warped and loose and must be replaced.

Appellant's witnesses claim that the water caused no damage to the floors but they were very dirty and could be placed in as good condition as before the fire by sanding them.

Two witnesses testified for appellant about the damage caused by the fire. One was a Des Moines contractor who made his estimate at the request of the adjuster for the underwriters. The other witness was a carpenter and contractor who resides in Lamoni. Neither witness had seen the house nor knew its condition prior to the fire.

In addition to the testimony of plaintiffs they introduced the evidence of two carpenters and cement workers who reside in Leon and were familiar with the conditions of the house before and after the fire. The testimony of witnesses for the plaintiffs on some of the controversial issues was more persuasive than the evidence offered by appellant. We conclude plaintiffs established their claim for damages to the plastering and floors.

We quote from the findings of the trial court:

"I am satisfied, thoroughly, that the walls in that house

were, the plastered walls, were thoroughly wet from the garret to the basement. I am satisfied that there isn't any way that the large volume of water that was put in there could escape to the basement without doing just that thing.

"I feel sure that when the water came down and wet the ceiling on the ground floor, that the water that wet the ceiling would have just one free way of escape, and that would be down the sidewalls."

After reviewing the evidence about the condition of the floors, the trial court stated:

"I am holding that the plaintiff has shown that these floors cannot be put in as good condition as they were before the fire without being removed."

Appellant further complains that the court made no allowance for depreciation of the floors, roof, plaster and interior decorations. There is no evidence by which we can determine with any degree of accuracy the amount of betterment to the house by the proposed repairs and consequent increase in its value.

The house was soaked with water and has been closed since March, 1938, extreme interior dampness resulting. Plaintiffs testified the house was in a weakened condition. Assuming the claimed depreciation of $290.20, we are of the opinion the trial court was right in finding that it would take at least $1,200 to indemnify the plaintiffs. The trial court stated:

"But there are other things in connection with this matter that I think offset that [betterment] to a great extent and one of them is that when water is poured into the inner walls of a building, as it is when there is a fire, and a large amount used to extinguish that fire, there is damage to the entire building.

"I think it is a matter of common knowledge and one of which the Court has a right to take judicial notice, that when you put water in a confined space, like between the walls, between the plastered and outer walls of a building, and where the air does not have a chance to circulate, that many times that water, if there is a serious amount of it, will cause a deterioration of the lumber and sometimes it will cause the rotting of the wood.

"Now, I have been unable to exactly determine in dollars and cents just what the damage would be in these matters that I have mentioned here, but on the whole case I believe an allowance of twelve hundred dollars will abundantly cover the cost of making all of the repairs that the Court has held have to be made here. In some instances the building itself would not be as good as it would have been had the repairs been made without the fire and without the house being flooded with water as it was, and that will be the holding of the Court."

The trial court reduced plaintiffs' estimate of $1,394.64 to $1,200. After a careful review of the record, we find no reason for disturbing the decree, which, in our opinion, is an equitable adjustment of the controversy. As often stated, though the case is tried here de novo, where there is a conflict in the evidence we must of necessity give weight to the findings of the trial court.—Affirmed.

HAMILTON, C. J., and SAGER, RICHARDS, MITCHELL, BLISS, HALE, OLIVER, and MILLER, JJ., concur.