Anna C. Wiley *vs.* London and Lancashire Fire
Insurance Company.

Third Judicial District, Bridgeport, October Term, 1914.
Prentice, C. J., Thayer, Roraback, Wheeler and Beach, Js.

The alienation clause in a standard policy of fire insurance, providing that the entire policy shall be void if any change take place in the interest, title or possession of the property insured, was designed to guard against any increase in the moral risk through change of ownership or possession, and has reference to an actual, real and substantial change, and not to one which is merely colorable or nominal and which in fact works no alteration whatever in the situation which existed when the policy was issued.

In the present case the plaintiff, who acted under legal advice, in order to prevent a threatening creditor with a small claim from attaching her dwelling-house which she had insured in the defendant company, conveyed it to a friend, who simultaneously, and pursuant to the plan agreed upon, reconveyed it to the plaintiff. Both deeds were left with the attorney who drew them, the first for immediate record, accomplished forthwith, and the second to be withheld from the record until the creditor's claim was settled or withdrawn. There was no change of possession and neither the plaintiff nor her friend intended to do, nor did they in fact do, anything more than to make a colorable transfer of record. Before the deed of reconveyance was recorded a fire destroyed the dwelling-house. In an action upon the policy to recover the loss, it was *held* that the simultaneous execution and delivery of the two deeds constituted but a single transaction and did not work such a change of title, under the alienation clause, as would relieve the defendant from liability, although the plaintiff might have been estopped from claiming title under the unrecorded deed, as against a creditor or bona fide purchaser of her grantee who had relied solely upon the latter's record title.

The trial court found, as a conclusion of fact from the subordinate facts, that the deed from the plaintiff to her friend had not been delivered, and this finding the appellant sought to have corrected. *Held:*—

1. That the recording of the first deed was prima facie proof of plaintiff's intention to deliver this deed.

2. That the recording of this deed with intent to vest in the grantee the record title was a legal delivery thereof.

3. That the acceptance of the second deed by the plaintiff, the purpose of which was to reconvey the property to her, was an admission by her that the first deed was delivered and accepted.

Wiley *v.* London & Lancashire Fire Ins. Co.

4. That the leaving of the deed with the scrivener for him to record, with intent to vest the record title in the grantee, constituted a legal delivery by the grantor.

5. That inasmuch as the subordinate facts clearly showed a legal delivery of this deed, the deduction or conclusion of the trial court to the contrary was erroneous, and the finding would accordingly be corrected in this particular.

A deed, when delivered and accepted, is good between the parties irrespective of the date of its record; and third persons whose rights are not prejudiced by a failure to record the deed within a reasonable time can derive no benefit or advantage from such failure.

The defendant contended that the deed by the plaintiff to her friend was fraudulent under General Statutes, § 1099, and was also an act of bankruptcy under the Bankrupt Act of 1898, chapter 541, § 3a (1). *Held* that this contention, had it been supported by the record, would not have been material to the issue raised by the pleadings, nor would it have availed the defendant anything.

The plaintiff claimed that there had been no real change of title, nor any fraud in the transaction. *Held* that evidence was properly admitted to show that there was no consideration for either deed, and that the plaintiff then owned a large amount of personal property.

The burden of proving the breach of a condition subsequent in a policy of fire insurance rests upon the insurance company which sets it up as a defense to an action upon the policy.

The construction of such a condition must be made under a rule favorable to the assured.

The delivery and acceptance of a deed are essentials of every valid conveyance of real estate.

Delivery is a matter of intention, and, like acceptance, may be proved either by word or act.

An attorney who drafts a deed may act as the agent of both the grantor and the grantee.

Argued November 5th—decided December 21st, 1914.

ACTION to recover the amount of a loss under a policy of fire insurance issued by the defendant, brought to and tried by the Superior Court in Fairfield County, *Curtis, J.;* facts found and judgment rendered for the plaintiff for $2,093, and appeal by the defendant. *No error.*

*Charles Welles Gross*, for the appellant (defendant).

*Charles D. Lockwood*, for the appellee (plaintiff).

WHEELER, J. This action is brought upon a policy of fire insurance of the standard form.

Aside from one of the corrections of the finding asked for, the main question in the case is raised by the defendant's special defense, which alleges that after the making of the contract, and before the fire, the plaintiff transferred by deed the subject of the insurance in violation of the provision of the policy reading: "The entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void. . . if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment or by voluntary act of the insured or otherwise."

The burden of proving the breach alleged—a condition subsequent—was on the defendant. *Benanti* v. *Delaware Ins. Co.*, 86 Conn. 15, 17, 84 Atl. 109. And the construction of this provision must be made under a rule favorable to the assured. Richards on Insurance (3d Ed.) p. 347.

The plaintiff had made an apparent alienation by deed, and she met the defendant's defense of alienation by claiming: (1) that there had never been a delivery of the deed; (2) that, simultaneously with the execution of the deed by the plaintiff, the grantee named therein had executed a deed conveying the property back to the plaintiff, and hence the alienation was nominal, not real, and did not constitute a violation of the alienation clause.

In order to determine whether the finding by the court, that there had been no delivery of the deed from the plaintiff to Miss Shaw, should be corrected, and to decide the legal questions raised by the reply, we must have before us the salient facts surrounding the execution of this deed.

The plaintiff, Mrs. Wiley, owned a lot of land in Greenwich, with a valuable dwelling thereon, upon which the policy in suit was issued. She then, and up to the date of the fire, owned personal property in this dwelling of the value of $20,000. She was harassed for the payment of a bill of $354, which the creditor, on September 8th, 1911, agreed to reduce to $279 provided a monthly payment of $50 was made. Mrs. Wiley paid $50 on September 8th, and in December the creditor demanded the entire bill and threatened to sue if it was not paid. Mrs. Wiley paid, on December 7th, $50, and, fearing that her place would be attached, she consulted an attorney, and he advised that she procure a third party to whom to deed the place so as to avoid an attachment. She left the matter to him to act according to his discretion. On December 21st she sent the creditor $50, leaving a balance unpaid of about $129. Her attorney, in pursuance of the advice given and the plan adopted, prepared a quitclaim deed from Mrs. Wiley to an unnamed grantee, and a quitclaim deed from this unnamed grantor to Mrs. Wiley, with the intention of having them executed, and the first forthwith recorded, and the second held for subsequent record. Upon his advice Mrs. Wiley brought to his office a Miss Shaw, to whom he explained the transaction and its purpose, and requested her to act as grantee in the first named deed and grantor in the second. Upon his assurance that no liability would accrue to her, she assented to his request. Both deeds were executed and were practically simultaneous transactions, although the deed from Mrs. Wiley to Miss Shaw was executed first. No consideration passed for either deed. Miss Shaw never entered into possession of the premises, and the plaintiff continued in their possession until after March 8th, 1912. The plaintiff did not intend to dispose of or convey her

title, and Miss Shaw did not desire to acquire any title or interest to the property described in the quitclaim deed. The intention of the attorney was to make it appear that the plaintiff did not own the property, and thus to prevent the creditor attaching, and it was his purpose and that of Mrs. Wiley to withhold from record the deed from Miss Shaw to Mrs. Wiley until the transaction between the creditor and Mrs. Wiley was settled. The attorney, pursuing his own plan, caused the deed from Mrs. Wiley to Miss Shaw to be forthwith recorded. He placed the other deed in his safe and forgot about it until March 4th, 1912, and on the next day he caused it to be placed on record.

On December 28th, 1911, the plaintiff's dwelling burned. The defendant subsequently tendered to the plaintiff the premiums paid, and notified her that the policy issued by it to her had been rendered void prior to the fire, for breach of its alienation clause.

The trial court found that there had never been a delivery of the deed from Mrs. Wiley to Miss Shaw, but found that there had been a delivery of the deed from Miss Shaw to Mrs. Wiley.

1. Our first question is to determine the correctness of the finding of a nondelivery of the first-named deed. We regard this finding as a conclusion of fact from the subordinate facts found. The delivery of the deed to, and its acceptance by, the grantee, are essentials of every valid conveyance of real estate. *Alsop* v. *Swathel*, 7 Conn. 500, 503. Delivery is a matter of intention, proved by act or word. Similarly, proof of acceptance may be by any act or expression which shows an intention on the part of the grantee to assent, or consent, to the grant. *Moore* v. *Giles*, 49 Conn. 570, 573. Mrs. Wiley's sole purpose in this entire transaction was to make a colorable transfer of the title of record, and so make it appear that Miss Shaw, and not she, was the

record owner, in order to prevent attachment of her property by the creditor. Her intention was not to vest a permanent title in Miss Shaw, but merely a title sufficient to prevent an attachment; to this end she purposed to have Miss Shaw give a deed back of the property Mrs. Wiley deeded her. Miss Shaw assented to the plan, and the scrivener carries out the plan by recording the one deed and retaining the other. That the scrivener was the attorney of Mrs. Wiley did not prevent his acting in relation to these deeds as the agent of both grantor and grantee. As such agent, his possession and control of the executed deeds for the purposes named in the plan was the possession and control of the respective grantees in the deeds. These circumstances unmistakably establish an intention on the part of Mrs. Wiley to deliver the deed to Miss Shaw. The subsequent recording of the deed is not conclusive, but is prima facie proof of Mrs. Wiley's intention to deliver the deed to Miss Shaw. 1 Devlin on Real Estate (3d Ed.) § 292. This case is not left to rest upon an unrebutted presumption; the finding is that the recording was in pursuance of Mrs. Wiley's predetermined intention. The recording of the deed with the intent to vest in Miss Shaw the record title was a legal delivery of the deed by Mrs. Wiley. *Moore v. Giles*, 49 Conn. 570, 573. When the deed went into the possession of the scrivener for the purpose of putting it upon record, and the grantee assented to this, it passed out of Mrs. Wiley's control. And when it was placed on record there were only two ways in which she might again secure the record title—by conveyance from Miss Shaw, or by a judgment. When Miss Shaw assented to the plan, a part of which was the leaving of the deed to her with the scrivener for record, she manifested a clear intention to accept the deed. So, in the execution and delivery of the deed back to Mrs.

Wiley, she, by this act, manifested an intention to accept the deed to herself; *Gould* v. *Day*, 94 U. S. 405, 412; *Creeden* v. *Mahoney*, 193 Mass. 402, 405, 79 N. E. 776; for she could convey nothing to Mrs. Wiley which she did not possess, consequently her acceptance of the deed from Mrs. Wiley was the necessary precursor of her deed to Mrs. Wiley.

The conclusion of the trial court, that Miss Shaw delivered the deed to Mrs. Wiley, is an inference from the subordinate facts found, and one which they fully justify. The further findings are the equivalents of a specific finding that the deed was accepted by Mrs. Wiley. And Mrs. Wiley's acceptance of the deed, whose purpose was to convey the property back to her, is an admission on her part that her deed to Miss Shaw was delivered and accepted. *Blackwell* v. *Blackwell*, 196 Mass. 186, 189, 81 N. E. 910. The finding of a delivery of the deed from Miss Shaw to Mrs. Wiley, and a contrary finding regarding the deed from Mrs. Wiley to Miss Shaw, are irreconcilable findings. The subordinate facts show a delivery in each instance, and the finding should be corrected to so state.

If our holding that the delivery of each deed took place when they were placed in the control of the scrivener for the purpose of having him carry out the prearranged plan relating to them were questionable, it would be of no importance in this case; for, under the plan, the deed to Miss Shaw was to be recorded forthwith after execution, and both deeds were to become effective at the same time. Since the recording of the deed to Miss Shaw with intent to pass the record title constituted a delivery of the deed, the delivery of the other deed was effected at one and the same time by the very terms of the plan.

2. The insurer had the right to make such contract with the assured as was within its charter and not

without the law. The alienation clause in the standard policy is intended to guard against the moral risk involved, so that through change of interest, title or possession, the insured shall not have a greater motive to burn the property, or less interest to guard it, than the assured contracted for. It is not only a lawful provision, but a reasonable one; and it should be construed so as to effectuate the obvious intent of the parties in not increasing the risk.

Courts have attempted by general phrase to define the character of change intended by the terms used in this clause. Thus some hold them to include every possible or conceivable change. It would not be difficult to show by example and authority that this definition is far too sweeping. Again, some say its terms include any material change. But this definition is not especially helpful in solving novel cases. Some say the change must be such as to enable the grantee to take out a new policy; and some say the change must be such as to increase the risk.

The last two attempts at definition seem to have more merit than the first two; and yet we are not persuaded that it is wise to attempt to formulate a definition which may cover all cases which have arisen or may hereafter arise. We think it preferable to suggest the nature and character of the change intended, and leave each case to its own facts, without essaying to control by automatic rule the instances which may arise. A change which will avoid the policy must result in an actual, real and substantial change in the condition of the title, interest or possession of the property. If the change be merely colorable or nominal, if the change be not in the fact of title but only in its evidence, if the change invest the grantee with a mere paper title, it will not work a forfeiture of the policy. *Schloss & Kahn* v. *Westchester Fire Ins. Co.*, 141 Ala. 566, 574, 37

So. 701; *German Ins. Co.* v. *Gibe*, 59 Ill. App. 614, 618; *Forward* v. *Continental Ins. Co.*, 142 N. Y. 382, 390, 37 N. E. 615; *Kyte* v. *Commercial Union Assur. Co.*, 144 Mass. 43, 45, 10 N. E. 518; *Cone* v. *Century Fire Ins. Co.*, 139 Iowa, 205, 207, 117 N. W. 304; *New Orleans Ins. Co.* v. *Gordon*, 68 Tex. 144, 3 S. W. 718.

Neither Mrs. Wiley nor Miss Shaw intended anything more than a colorable or nominal transfer; no consideration passed; possession remained with Mrs. Wiley; the two deeds were parts of a single transaction, executed practically simultaneously, and delivered and accepted literally simultaneously. Obviously there was no increase of the risk, and at no time did Miss Shaw have a title which she could enforce against Mrs. Wiley, or any interest in the subject-matter which she could have insured. A conveyance by deed and at the same time a reconveyance by deed to the original grantor works no change in the title or interest. The two deeds simultaneously executed and delivered constitute a single transaction. *Tittemore* v. *Vermont Mut. Fire Ins. Co.*, 20 Vt. 546; *Kyte* v. *Commercial Union Assur. Co.*, 144 Mass. 43, 10 N. E. 518.

The defendant relies, principally, upon the authority of the following cases, each of which differs radically from the case at bar. In *Rosenstein* v. *Traders Ins. Co.*, 79 N. Y. App. Div. 481, 79 N. Y. Supp. 736, the title of an insured was conveyed to his son, and no reconveyance made by the son prior to the fire, although father and son intended at some time, in some way, to reinvest the father with the title. This was a very plain case of change of title, distinguishable at all points from the case at bar. In *Bemis* v. *Harbor Creek Mut. Fire Ins. Co.*, 200 Pa. St. 340, 49 Atl. 769, the insured by his conveyance divested himself of his title for over five months, when a reconveyance was had. There is nothing in the record to indicate that this was

not a real transfer, nothing to show from the beginning an intention to reconvey, but it does show that the transfer and retransfer were not simultaneous transactions. In *Stuart* v. *Reliance Ins. Co.*, 179 Mass. 434, 60 N. E. 929, the insured was divested of title five days before the reconveyance was had, and the risk may in that time have increased.

None of these cases present examples of a transfer and retransfer which are simultaneous transactions, but cases where there was a real and substantial change in the title. We have not succeeded in finding an adjudged case whose facts were similar to the case at bar, where the policy was voided for breach of the alienation clause.

The additional claims of the defendant are either involved in our treatment of the case or else require but a brief notice.

3. That Mrs. Wiley did not have as good and complete a title at the time of the fire as when the policy issued. Our holding is that at the instant she gave she got back, so that there was no appreciable period of time when she did not possess the same title and interest as when the policy issued. That never changed, although the evidence of it upon the land records had changed. A creditor or purchaser from Miss Shaw, who, without notice of the reconveyance, had relied upon the record title to Miss Shaw, would not be permitted to be prejudiced by such reliance. Mrs. Wiley would, in those circumstances, be estopped to stand upon her title. The defendant has not been prejudiced through reliance upon the record title standing in the name of Miss Shaw. The question is as to the violation of a clause of the policy made before the transfer, and is to be determined by the title Mrs. Wiley in fact had, not by that which her conduct has estopped her to prove against creditor or purchaser.

We cannot agree with the defendant in its position

that General Statutes, § 4036, taken in connection with *Wheeler* v. *Young*, 76 Conn. 44, 55 Atl. 670, makes inevitable the conclusion that a deed purposely withheld from record for an unreasonable time, with the assent of both parties, takes effect only when it is recorded. The deed, when delivered and accepted, is good between the parties, irrespective of the date of its record, and when the title of the grantee is in issue, and the rights of no one are prejudiced by the failure to record, that title is to be determined for all purposes by the fact of title, and not by the record evidence of it. Whether this deed was recorded or not does not appear to us to be pertinent to the question of whether or not there has been a violation of the alienation clause.

4. If the record supported the defendant in its claim that the transfer of this title by Mrs. Wiley was a fraudulent act under General Statutes, § 1099, and an act of bankruptcy under the Bankruptcy Act, § 3a(1), (30 U. S. Stat. at Large, 546), it would be difficult to see its materiality in an issue between the insurance company and the plaintiff, and more difficult to see how it would avail the defendant to prove that, through fraud, there had been no change of title or interest, but that it had remained as at the time the policy issued.

5. As to the rulings on evidence. Evidence of consideration was a part of the transaction, and it, as well as evidence of the possession of other property by the plaintiff at the time of the transfer, were material and relevant to the issue of fraud made by the defendant.

Other assignments of error we have either already disposed of or deem upon their face insufficient.

There is no error.

In this opinion the other judges concurred.