ALBERT CHAUSER *vs.* NIAGARA FIRE INSURANCE COMPANY.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued October 5th—decided December 9th, 1937.

*Charles Welles Gross,* for the appellant (defendant).

*A. Robert Levett,* with whom, on the brief, was *David M. Reilly,* for the appellee (plaintiff).

JENNINGS, J. The plaintiff recovered a verdict for the burning of a building upon which the defendant had issued a fire insurance policy. The defendant has appealed from the denial of the motion to set that verdict aside and from the judgment entered upon it. All questions raised in the latter appeal are involved in that taken from the refusal to set the verdict aside and will be discussed in connection with it. The jury might reasonably have found the following facts:

The plaintiff had owned the property at 138 East Broadway, Myrtle Beach, Milford, at various times and just prior to October, 1931, repurchased it from one Harry Allison. On October 1st, 1931, Allison and one Lawrence Howshield, agent and broker for the plaintiff, called at the office of Clarissa M. Fowler in Milford to complete the transfer. Miss Fowler was a title searcher and the agent of the defendant. As such she had previously dealt with the plaintiff in both capacities with reference to this property.

Howshield informed Miss Fowler that although Albert Chauser would be the real owner of the property, he wanted the deed made to Bertha Chichester. Miss Fowler made the deed as directed and it was duly executed. Howshield then asked to have the fire insurance transferred from Allison to Chauser. Miss Fowler, as agent for the companies, replied that she would take

care of the insurance for Chauser but that the policy would have to be in the name of the new owner, that is, Bertha Chichester. Howshield assured Miss Fowler that Chauser would pay the premiums. Mrs. Chichester and her husband were in charge of another piece of property owned by the plaintiff in New Haven. She never had any actual connection with the Milford property. She did not even know where it was.

On October 2d, 1931, Howshield delivered the deed to Chauser in New Haven. Chauser then talked with Miss Fowler on the telephone, asking to have the insurance in his name. Miss Fowler assured him that everything was all right for him with the insurance in the name of Bertha Chichester. On October 3d, 1931, the plaintiff had his attorney draw a warranty deed of the same property to Albert Chauser from Bertha Chichester. The deed was executed by her and delivered the same day. The deed from Allison to Chichester was recorded October 8th, 1931, but that from Chichester to Chauser was never recorded nor did knowledge of it come to Miss Fowler or the defendant until after the fire. On October 12th, 1931, the plaintiff wrote Miss Fowler a letter about balances due from former owners for insurance premiums on the premises. This letter contained the following statement: "Bertha Chichester, from now on, is the owner and I shall take care of her myself. Any future insurance or any insurance from now on, namely, any insurance pro rated from the date they took over the title to the expiration of the present policy, I shall send a check personally for it. Any renewal premiums I will take care of as long as Bertha Chichester is the owner." Bills for insurance premiums were sent to Mrs. Bertha Chichester, care of Albert Chauser, 59 Center Street, New Haven, Connecticut, and paid by him. This policy was renewed by Miss Fowler as of November 18th,

1931, and November 18th, 1932, without further contact with or information from the plaintiff. On October 16th, 1933, the premises in question were damaged by fire.

On October 19th, 1933, Mrs. Chichester signed a statement for the state police saying, among other things, that she had nothing to do with the property, had lost nothing and could not very well file a proof of loss. On November 6th, 1933, she signed and swore to a proof of loss which was delivered to the defendant. On December 28th, 1933, the defendant notified her that it denied any liability to her on the ground that, at the time of the fire, she was not the owner of the property. On Ocober 8th, 1935, the plaintiff sold the property to Dominick Lombardo and it was conveyed to him by a warranty deed executed by Bertha Chichester.

On this state of facts the evidence and memorandum on the motion to set aside the verdict show that what the conversations were between Miss Fowler, Mr. Howshield and Mr. Chauser on October 1st and 2d, 1931, were important issues before the jury. While, as claimed by the defendant, there was a sharp conflict in the testimony on this point, the verdict and answer to the interrogatories definitely fixed the facts to be as claimed by the plaintiff. *Canfield* v. *Sheketoff*, 104 Conn. 28, 132 Atl. 401. The jury could reasonably have reached this conclusion and the trial judge was correct in refusing to substitute his own differing opinion. Without analyzing the testimony in detail, Miss Fowler admitted talking with Howshield and Chauser, she sent the bills to Mrs. Chichester in care of Chauser and they were paid by him and the testimony of Alderman squarely contradicted her claim.

It follows that on those dates the plaintiff was in effect the insured. The knowledge of Miss Fowler was

the knowledge of the defendant and, in spite of the language of the policy, the defendant was estopped to raise any of the numerous defenses which appear in its brief on this point. *MacKay* v. *Aetna Life Ins. Co.,* 118 Conn. 538, 173 Atl. 783; *Back* v. *Peoples National Fire Ins. Co.,* 97 Conn. 336, 340, 116 Atl. 603. The defendant claims that this situation results in an oral contract of insurance and that the plaintiff is attempting to recover on this oral contract rather than on the written policy. On the contrary, Mrs. Chichester, as the holder of the bare legal title for the benefit of the plaintiff, was trustee of a resulting trust for him and was recognized as such by the defendant. *Ward* v. *Ward,* 59 Conn. 188, 195, 22 Atl. 149; *Fox* v. *Shanley,* 94 Conn. 350, 355, 109 Atl. 249. The plaintiff is suing as the beneficiary of the written contract. He should not be penalized on this ground for following the instructions of the defendant.

The establishment of this claim of the plaintiff was necessary before any further consideration of his case was possible. The contract of insurance actually in force at that time covered the property in question. As stated, the legal and record title was in Mrs. Chichester who held it for the beneficial owner, the plaintiff. It was with knowledge of this state of facts that the defendant was charged. While the renewal policies were technically new contracts, *Back* v. *Peoples National Fire Ins. Co.,* supra, p. 344, in the absence of any further communication with the insured, a finding that the original contract was continued is reasonable. The policy itself provided that "this policy may by renewal be continued under the original stipulations in consideration of premium for the renewal term provided that any increase of hazard must be made known to the company at the time of renewal or this policy shall be void." See *Fitzpatrick* v. *Hartford Life*

& *Annuity Ins. Co.,* 56 Conn. 116, 128, 13 Atl. 673; *Witherwell* v. *Maine Ins. Co.,* 49 Me. 200, 203; 5 Cooley, Briefs on Insurance (2d Ed.) p. 4256.

The fundamental objection of the defendant is based on that provision of the policy which provides that it shall be void "If the interest of the insured in the policy be not truly stated therein" and that that interest was not "unconditional and sole ownership." The plaintiff had paid for the property and had the sole equitable interest. Such loss as occurred fell entirely on him.

In *Hough* v. *City Fire Ins. Co.,* 29 Conn. 10, the policy contained the following condition: "3. Property held in trust, or on commission, must be insured as such; otherwise the policy will not cover such property. If the interest in property to be insured be a leasehold interest, or other interest not absolute, it must be so represented to the company, and expressed in writing, otherwise the insurance shall be void." The interest of the plaintiff in the property consisted of the parol promise of the holder of the legal title to convey on the performance of certain conditions, some of which had been fulfilled. Under these circumstances it was held that a finding that the plaintiff had an absolute interest was proper. *Anderson* v. *Yaworski,* 120 Conn. 390, 397, 181 Atl. 205, 101 A. L. R. 1232, questions this case but not on the point under discussion. The following definition of unconditional and sole ownership in *Hartford Fire Ins. Co.* v. *Keating,* 86 Md. 130, 145, 38 Atl. 29, was approved in *Mishiloff* v. *American Central Ins. Co.,* 102 Conn. 370, 377, 128 Atl. 33: "To be 'unconditional and sole,' the interest must be completely vested in the assured, not conditional or contingent, nor for years or for life only, nor in common, but of such a nature that the insured must sustain the entire loss if the property is

destroyed; and this is so whether the title is legal or equitable." See also *Petello* v. *Teutonia Fire Ins. Co.,* 89 Conn. 175, 179, 93 Atl. 137; 60 A. L. R. 11, note; 3 Cooley, Op. Cit. p. 2120. Applying these rules to the facts of this case, it is clear that there was no violation of this provision of the policy.

The defendant further contends that, even though this defense fails, the admitted fact that after the first policy was written, a deed of the property was given by Mrs. Chichester to the plaintiff required that the verdict be set aside. This claim is based on the provision of the policy that it shall be void if a change "took place in the title . . . of the subject of insurance." Before this deed was delivered, Mrs. Chichester held the legal title for the benefit of the plaintiff. Thereafter she was the record owner only and the legal and equitable titles were merged in the plaintiff. This occurred after the issuance of the first policy and before the issuance of the renewal policies. Of course, notice at the time of the issuance of the original policy would not be notice of any change of title thereafter occurring. *Peoria Sugar Refining Co.* v. *People's Ins. Co.,* 52 Conn. 581, 584. It is therefore necessary to consider whether the transaction described constituted a change of title within the meaning of this clause in the policy.

As stated in *Wiley* v. *London & Lancashire Fire Ins. Co.,* 89 Conn. 35, 42, 92 Atl. 678, it is probably unwise to try to frame a general rule to fit all of the novel situations which arise under policy clauses of this kind. The most common question asked in these cases is whether the change is of a nature to increase the motive to burn or diminish the motive to guard the property from loss. While, as stated, each case must be decided on its own facts, a purely nominal or tech-

nical change in the legal title will not ordinarily defeat a recovery.

In the *Wiley* case, supra, it was held that a deed from an insured to another, recorded, with a similar deed back, unrecorded, was, under the circumstances no such change of title as would avoid the policy. Similar situations are described in the cases cited on page 43 of that opinion and in *New Orleans Ins. Co.* v. *Gordon,* 68 Tex. 144, 3 S. W. 718; *Holyfield* v. *Farmers Alliance Ins. Co.,* 132 Kan. 539, 543, 296 Pac. 710; *Mosher* v. *Iowa Mutual Ins. Co.,* 212 Iowa 85, 235 N. W. 743; *McVay* v. *Western Grain Dealers' Fire Ins. Co.* (Iowa) 252 N. W. 548.

The policy contract provides: "This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof." Two facts are urged by the defendant under this head. It claims that the plaintiff concealed a material fact by failing to report the execution of the deed from Mrs. Chichester. The foregoing discussion shows that this deed effected no real change in the title and was immaterial. The other claim is based on the letter of October 12th, 1931, from the plaintiff to Miss Fowler. This letter referred to Mrs. Chichester as the owner. This could be interpreted "record owner," but that aside, with the knowledge Miss Fowler is found to have had, this reference could not, under the circumstances and for the reasons given above, be considered the misrepresentation of a material fact. The case of *Treadway* v. *Hamilton Mutual Ins. Co.,* 29 Conn. 68, is not in point. In that case there was a clear false representation and the insured was held to have no present right to recover the property free of the incumbrances he had created and the deed he had given.

On all of these questions we look through the technical situation to the real state of facts. Mrs. Chichester's connection with the property was purely nominal. As stated before, she never had any contact with or knowledge of it. The uniting of the legal with the equitable title in Chauser merely confirmed his unconditional ownership in the property. The jury have found that the defendant insured Chauser's interest before the giving of the deed. For the reasons stated and on the authorities cited, the giving of the deed effected no such change as avoided the policy. The defendant complains of the evidence of increased moral hazard because of this unrecorded deed. In the *Wiley* case, supra, the admitted reason for the transaction was to avoid attaching creditors, yet the policy stood. Here the plaintiff denied any such motive and no direct evidence to the contrary was introduced. The defendant can prevail on none of the grounds now under discussion.

The next reason advanced relates to the filing of proof of loss. The policy provides: "If fire occur the insured . . . shall render a statement to this company, signed and sworn to by said insured, stating . . . the interest of the insured and of all others in the property; . . . and changes of title, use, occupation, location, possession or exposures of said property since the issuing of this policy; . . ." The proof of loss is an essential element in the plaintiff's proof. *Benanti* v. *Delaware Ins. Co.*, 86 Conn. 15, 18, 84 Atl. 109. The principal complaint of the defendant is that the proof was made by Mrs. Chichester, the named insured, instead of by Albert Chauser, the actual owner and real insured. The plaintiff was faced by a difficult situation. If he filed in his own name, the defendant would object that he was not the named insured. Since some of the objections raised apply to

both forms, the defendant would probably have still complained if, as suggested by it, he filed in both names.

The purpose of requiring a proof of loss is to secure a formal statement of claims by the insured and to facilitate the investigation of the insurer. For that reason, the rule has been stated to be that to constitute fraud or false swearing, which will work a forfeiture of the insurance, there must be a false statement wilfully made with respect to a material matter with the intention of thereby deceiving the insurer. *Davis-Scofield Co.* v. *Reliance Ins. Co.,* 109 Conn. 686, 689, 690, 145 Atl. 42; 14 R. C. L. 1343; 32 L. R. A. (N. S.) 453, 457, 458. Here the proof was filed, all questions were answered and the true state of the title appeared on the face of the document. Under "Title and Interest" it was stated that title is held by the assured for the benefit of Albert Chauser and under "Changes" that an unrecorded quitclaim has been given to Albert Chauser. These two clauses, taken together, were not susceptible of any misunderstanding. In view of the conclusion reached, it is unnecessary to discuss the effect of the fact that the proof of loss was met with a notice of formal denial of liability. Many misstatements in matters of detail are pointed out in the defendant's brief but if the principal contention does not prevail, they become insignificant. We are brought back to the basic consideration heretofore discussed. Was the proof intended to deceive the defendant in any material particular? We conclude that it was not and that the court was correct in its denial of the motion to set aside the verdict on this and other grounds.

The vital point in the case concerned the arrangements made when the policy was first issued. Once this question was decided in favor of the plaintiff, he

was in effect the insured. He did nothing thereafter to affect the real merits of the situation.

There is no error.

In this opinion the other judges concurred.