Andrew J. MAVROS, George J. Mavros, and Chicago Title & Trust Company, an Illinois corporation, as Trustee under Land Trust No. 35254, Plaintiffs-Appellants,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Minnesota corporation, and Standard Insurance Company of New York, a Connecticut corporation, Defendants-Appellees.

No. 13059.

United States Court of Appeals
Seventh Circuit.

Nov. 22, 1961.

Rehearing Denied Dec. 28, 1961.

Bernard M. Mamet, Chicago, Ill., for appellants.

Gerald M. Chapman, Edward A. McCarthy, Saul A. Epton, Chicago, Ill., for defendants-appellees.

Before HASTINGS, Chief Judge, and KNOCH and KILEY, Circuit Judges.

KILEY, Circuit Judge.

This is a diversity suit by owners-lessors to recover proceeds of fire insurance policies covering premises destroyed by fire of incendiary origin. They appeal from the verdict and judgment against them.

Gus Mavros, brother of plaintiffs, conveyed title of the premises to the Chicago Title and Trust Company, as trustee, in November, 1951. The Title Company held the legal title at the time of the fire in August, 1955, under a land trust for the benefit of plaintiffs. The premises consisted of a tavern and night club on the first floor, and an apartment, occupied by a sister of plaintiffs, on the second.

In August, 1954, the premises were leased to Daniel Collins who "borrowed" money from his "buddy" Tony Pacini for purchase of the tavern fixtures.

Defendants insured the Title Company, as trustee, in one policy issued in August, 1954, and in another issued in August, 1955. They insured plaintiffs also in two policies covering loss by fire of personalty in the premises. Following the fire, plaintiffs, for the trustee in two policies and for themselves in the other two, claimed the $50,000 proceeds of the four policies, but defendant insurers refused to pay. This suit followed.

The affirmative defenses submitted to the jury were 1) that plaintiffs wilfully concealed or misrepresented a material fact in failing to disclose the interest of Gus Mavros in the premises, 2) that plaintiffs were implicated in the arson, and 3) that plaintiffs increased the hazard by means within their control or knowledge.

Plaintiffs contend there is no substantial evidence to support the defenses and that accordingly the trial court erred in refusing to direct a verdict in their favor. Insurers had the burden of proof of the defenses. And we consider only the evidence favorable to them, on this contention, together with legal inferences drawn most strongly in their favor.

We shall assume, but not decide in discussing the first defense, that Gus Mavros had an insurable interest in the premises when the policies issued. The question is whether there is substantial evidence justifying an inference that George and Andrew Mavros deliberately concealed the "interest" of Gus in order to deceive insurers into issuing the policies which the insurers would not issue if they had known of Gus' "interest". Chauser v. Niagara Fire Ins. Co., 123 Conn. 413, 196 A. 137, 141 (1937).

When Gus Mavros conveyed to the Title Company, he was in financial difficulty and the conveyance was made to insulate the premises from claims of his creditors. The fact that a motive for the conveyance was to avoid creditors is not in itself justification for voiding the policies. Chauser v. Niagara Fire Ins. Co., 123 Conn. 413, 196 A. 137 (1937). (See reference to the Wiley case [1] at 196 A. 137, 141.) There is no evidence that Gus Mavros was a shady character such as Hubbard in Sebring v. Fidelity-Phenix Fire Ins. Co. of N. Y., 255 N.Y. 382, 174 N.E. 761 (1931). There is no evidence to reflect upon the reputations or characters of his brothers George and Andrew. All three are presumably honest and neither suspicion nor presumption that they were guilty of fraud is enough under Illinois law. Weininger v. Metro. Fire Ins. Co., 359 Ill. 584, 195 N.E. 420, 98 A.L.R. 169 (1935).

There is no testimony that insurers would have rejected the application if they had known of Gus' interest, as there was in Rosenfeld v. Union Ins. Soc. of Canton, Ltd., 157 F.Supp. 395 (E.D. N.Y.1957). There is no basis for an inference that George and Andrew should have regarded Gus' "interest" so important to insurers that they would have refused to issue the policies to the Title

---

1. Wiley v. London & Lancashire Fire Ins. Co., 89 Conn. 35, 91 A. 678 (1914).

Company as trustee. Weinstein v. Metro. Life Ins. Co., 389 Ill. 571, 60 N.E.2d 207 (1945). See Ginsburg v. Pacific Mut. Life Ins. Co. of Calif., 2 Cir., 89 F.2d 158, 159 (1937) for the rule from which the converse arises. Also Dinnerman v. Boston Ins. Co., 181 Misc. 703, 42 N.Y.S. 2d 89 (City Ct.1943).

None of the several cases cited by defendant is authority for sustaining the defense of fraudulent concealment. No case has been cited in which a court of review has decided, on evidence like that before us, that the question of fraud was for the jury. In our opinion, no proper inference, however strongly drawn in insurer's favor, can support a finding, so as to void the policy, that George and Andrew Mavros fraudulently concealed Gus' interest. There is no basis for an inference that they were, or should have been, conscious that the application would be rejected if the insurers knew Gus had an interest and was in financial trouble. There is no basis for an inference that plaintiff deceived insurers into issuing a policy that would not otherwise have been issued.

We conclude that, on the evidence favorable to insurers, there is no basis for an inference of fraud. The court erred in submitting this defense to the jury.

The next question is whether the facts warrant an inference of conspiracy to commit arson between Collins, the presumptive arsonist Pacini, and plaintiffs.

There was testimony that plaintiffs knew Collins for twenty years, knew that his business was poor, that he was in financial trouble and that the tavern and night club did not provide plaintiffs enough income for mortgage payments. There was testimony that plaintiffs' sister heard Pacini express on two occasions the intention to burn the building, and that the Mavros family was closely knit. There was evidence to prove Pacini set the fire. There was testimony that when the fire occurred George was absent from the city, Andrew was in the hospital, the sister was visiting Andrew. And there was Gus' unconvincing testimony of his whereabouts the day of the fire.

Here, the insurers say, is a common motive, the liquidation of a difficult investment, and knowledge of Collins and the sister of plaintiffs that Pacini was going to set the fire. Insurers argue that the knowledge of plaintiffs' sister of Pacini's intention was knowledge of plaintiffs. They claim, on this evidence and these inferences, that a prima facie showing was made of plaintiffs' participation in the conspiracy.

There is no doubt that adequate circumstances may justify an inference of arson or complicity; that economic instability may be a factor as with plaintiff in the case of Williams v. Cambridge Mut. Fire Ins. Co., 5 Cir., 230 F.2d 293 (1956), or moral instability as the character in Sebring v. Fidelity-Phenix Fire Ins. Co. of N. Y., 255 N.Y. 382, 174 N.E. 761 (1931); but there is no case cited in which the amount of evidence before us was held sufficient to take a case of arson, or conspiracy to commit arson, to the jury. There is no evidence here as in Nathan v. St. Paul Mut. Ins. Co., 251 Minn. 74, 86 N.W.2d 503 (1957), from which a conspiracy between the Mavroses and Collins and Pacini could reasonably be inferred.

We have read the several cases cited by insurers. Williams v. Cambridge Mut. Fire Ins. Co., 5 Cir., 230 F.2d 293 (1956) is not useful. There the evidence favorable to insurers was ample to sustain the trial judge's finding that plaintiff had to be either the arsonist or accomplice. That is not true here. In Stein v. Girard Ins. Co., 7 Cir., 259 F.2d 764 (1958) only plaintiff and his cook had keys, a person was seen leaving the restaurant and turning a key in the door, at which time gasoline fumes were coming from under the door and in "less than five minutes" the explosion occurred. And the cook had nothing to do with the fire. These facts are far different from those before us.

The affirmative proof must overcome the presumption of innocence in

favor of plaintiffs. There is no direct evidence to implicate them in the arson. The inference may be drawn that plaintiff's sister would probably have told them what she had heard Pacini say generally about burning the premises. But the jury could not infer from that inference alone that with that knowledge plaintiffs deliberately absented themselves on the particular day of the fire, especially since there is no testimony that they would otherwise have been present; and from these inferences alone, infer that they were therefore probably part of the Collins-Pacini conspiracy. There is nothing to justify the essential inference that plaintiffs in any way joined in the design of arson.[2] No authority for such an inference has been cited. This defense should not have gone to the jury.

Finally the question is whether there is substantial evidence to sustain the defense of increased risk, which, if a condition of the policy suspends its operation. Goldman v. Piedmont Fire Ins. Co., 3 Cir., 198 F.2d 712, 715 (1952). Inferences may be drawn that plaintiffs knew of their sister's knowledge that Pacini had access to the tavern and night club and apparently had an interest in the premises.

The jury could have concluded, defendants argue, that from these facts and inferences plaintiffs had reason to believe that Collins and Pacini were considering arson, and that plaintiffs did nothing about it. Assuming, but not deciding all this, there is nothing in the record or in insurers' brief to show what means plaintiffs had, under their control, to do anything about it. We have not in this record the "steps" that were "open to * * * abate the hazard" which the court in the Goldman case found "obvious".

There is no substantial evidence to support the defense of increased hazard.

We need pass on no other point raised.

For the several reasons given, we conclude the trial court erred in refusing to direct a verdict for plaintiffs. The judgment is reversed and the cause remanded for judgment in accordance with the views expressed in this opinion.

---

2. In cases involving either civil conspiracy or criminal conspiracy, 'conspiracy' has been defined as a combination of two or more persons by concerted action to accomplish some criminal or unlawful purpose or some purpose not in itself criminal or unlawful by criminal or unlawful means. 11 I.L.P. Conspiracy § 2 (1955).