[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION JAN. 11, 1996.
Plaintiff Gerald Kahn, an attorney, appeals a decision of the defendant statewide grievance committee reprimanding the CT Page 1106 plaintiff. The committee acted pursuant to Practice Book §§ 27J and 27M and General Statutes §§ 51-90g and 51-90h. The appeal is brought pursuant to Practice Book § 27N. See also,Pinsky v. Statewide Grievance Committee, 216 Conn. 228 (1990). The court finds the issues in favor of the plaintiff.
The facts essential to the court's decision are not in dispute. The plaintiff represented the complainant's former husband in the dissolution of their marriage and in negotiating the financial agreement between the parties. That agreement, which was incorporated in the court's judgment of dissolution, provided in part that the complainant be awarded the family residence in Madison subject to a mortgage in favor of the husband in the amount of $32,500. The court entered the judgment on July 11, 1989.
On December 12, 1989, the former husband and the complainant executed the quitclaim and mortgage deeds required by their agreement and by the court's decree. On December 14 1989, the plaintiff forwarded the former husband's quit claim deed of his interest in the Madison residence to the complainant's attorney, stating that the deed was being delivered to him for recording on condition that the complainant's attorney also record the required $32,500 mortgage note and deed in favor of his client, the former husband.
At this time, the former husband, the plaintiff's client, owed the plaintiff $25,000 in legal fees. He executed a note to the plaintiff in that amount, secured by a mortgage on his interest in the Madison property. On December 14, 1989, the plaintiff sent those documents to the town clerk for recording. At that time, the plaintiff knew that the mortgage in favor of his client, which established the client's $32,500 interest in the property had not yet been recorded. As noted, however, the complainant had already executed the mortgage deed in favor of the former husband.
There then occurred a snafu that would later contribute significantly to the issues in this case. For reasons not relevant here, the complainant's attorney never recorded the former husband's quitclaim deed in favor of the complainant or the complainant's $32,500 mortgage deed in favor of the former husband. Immediately after all of these transactions had taken place, therefore, the only document recorded on the land records was the former husband-client's mortgage deed for $25,000 in CT Page 1107 favor of the plaintiff to secure payment of the legal fees.
The complainant and her former husband continued to dispute, and in November 1990, they settled a civil action that the complainant had instituted against him. As part of that settlement, the former husband released the $32,500 mortgage that he held on the residence owned by the complainant. The plaintiff witnessed the release. The release was duly recorded on the land records even though the underlying mortgage deed had never been recorded. The plaintiff did not release the mortgage he held from the former husband at that time.
In November 1993, the complainant discovered the former husband's mortgage deed in favor of the plaintiff on the land records. On November 9, 1990, she wrote to the plaintiff demanding that he file a release of that mortgage within ten days. When the plaintiff failed to comply with this timetable, the complainant filed the grievance that is the subject of this appeal. Thereafter, on December 8, 1993, the plaintiff executed the requested release of the mortgage. The grievance, however, once filed, then took on a life of its own, even though the complainant in her letter of December 31, 1993 seemed satisfied with its "resolution."
On January 28, 1994, the local grievance panel notified the parties that it found no probable cause to support a finding of misconduct by the plaintiff. On May 19, 1994, the reviewing committee designated by the statewide grievance committee reversed the decision of the local panel and notified the parties that it found probable cause to believe that the plaintiff had violated Rules 8.4(c) and (d) of the Rules of Professional Conduct.
The reviewing committee conducted a hearing at which all parties were present and offered testimony and evidence. Following the hearing, the defendant statewide grievance committee adopted the findings and conclusions of the reviewing committee, holding that the plaintiff violated Rule 8.4(c) and issuing a reprimand. It is that decision that is the subject of this appeal.
Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The committee's specific conclusion, based on the evidence summarized above, was that the CT Page 1108 plaintiff violated the rule "by placing a lien on the Complainant's Madison property when he was aware that his client, Complainant's former husband, did not have an interest in the property." In its brief to the court on appeal, the committee clarified the rationale for its decision, stating that the violation occurred
 by placing a lien on the Complainant's property when he was aware that his client did not have a valid recorded interest in the property. In placing a lien on the Complainant's property when he was aware that his client did not have a valid recorded interest in the property, the (plaintiff) misrepresented on the land records the status of his own interest in the property. The (plaintiff) represented that he had a mortgage on the property at a time when his client's interest in the property had passed to the Complainant by operation of law and his client's new limited interest was unrecorded.
As the above excerpts from the committee's decision and brief on appeal make clear, the committee's determination that the plaintiff violated Rule 8.4(c) was based solely on the fact that he recorded on the Madison land records the mortgage deed from his client in 1989. The decision and the brief also indicate, unequivocally, that the pivotal fact that made the plaintiff's action a misrepresentation" in the committee's view was that the complainant's $32,500 mortgage deed to her former husband was never recorded. From that fact, the committee jumps to the conclusion that the former husband-client did not have a "valid" interest that he could convey and the plaintiff knew it. Therefore, the committee contends, the plaintiff misrepresented the true state of the title to the property when he recorded the client's deed to him.
The problem with the committee's analysis of these transactions is that it misperceives the legal effect of the failure to record the documents in question. It has long been settled law, under Connecticut's recording statutes, that as between the parties, a deed is perfectly valid, though not recorded. See General Statutes § 47-10. In Wiley v. London Lancashire Fire Insurance Co., 89 Conn. 35, 45 (1914), the court held:
 The deed, when delivered and accepted, is good between the parties, irrespective of the date of its record, and when the title of the grantee is in issue, and the rights of no one are CT Page 1109 prejudiced by the failure to record, that title is to be determined for all purposes by the fact of title, and not by the record evidence of it. Whether this deed was recorded or no. does not appear to us to be pertinent to the question of whether or not there has been a violation of the alienation clause.
Similarly, many years later, this court held that "(a) quitclaim deed and (a) mortgage, although admittedly not properly executed or recorded, nonetheless are valid as between the parties . . . ." Boudreau v. Wozniak, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 100325 (July 31, 1990, Lewis, J.). See also, to the same effect, R. Cunningham, The Law of Property (1984), p. 776 n. 10; 26 C.J.S. Deeds § 74, p. 799.
Pursuant to these authorities, the $32,500 mortgage deed from the complainant to the former husband-client was perfectly valid as between them. Not only did the plaintiff's client have a valid interest in the property, therefore, the complainant herself created that interest.
Furthermore, the interest that the former husband client had in the property appears to have been fully assignable. "Mortgages have always been regarded as conveyances of land within the meaning of the recording statute. An assignment of a mortgage passes to the assignee all the title the mortgagee had in the land . . . The assignment is in effect a conveyance of the land included in the mortgage." Second National Bank of New Haven v.Dyer, 121 Conn. 263, 267 (1936). In the present case, the mortgage deed from the complainant to her former husband states that it conveys title to him and "his heirs and assigns forever." (Emphasis added.) And in the warranty section of that deed, the complainant states she does "bind myself and my heirs forever to warrant and defend he above granted and bargained premises to the said grantee, his heirs and assigns, against all claims and demands whatsoever . . . ." (Emphasis added.)
Upon the execution and delivery of the deeds between the complainant and her former husband, the latter had a valid interest in the Madison property, certainly an interest that the complainant could not contest at that time. The client also had full right to assign all or any part of his interest in the property to the plaintiff. And that is essentially what he did in executing the note and mortgage deed to the plaintiff to secure the legal fee. The fact that the former husband-client did not CT Page 1110 utilize a more orthodox form of assignment is of no significance in this case. The mortgage deed that he did execute fully and clearly recites the circumstances and conditions of the transaction.
Finally, there was nothing nefarious in the act of recording. "In general, no one is obliged to record anything, and there is no direct penalty if a conveyance goes unrecorded. As between the original parties, an instrument is fully binding whether it is recorded or not. But the recording acts provide a strong incentive for every grantee to record, for if he fails to do so, he is taking the risk that his grantor will make a subsequent conveyance that will cut him off. This principle is well recognized by people in the real estate and lending business, and the vast majority of conveyances today are immediately and properly recorded." R. Cunningham, supra, The Law of Property, p. 776, n. 10.
Based on the law and the facts summarized above, the court concludes that the plaintiff was guilty of no misconduct when he recorded the interest in the Madison property that he acquired from his client. Having conveyed that interest to the client in the first place, the complainant was in no position to object. And the deed that the plaintiff recorded did not misstate the interest of the client or his own.
In reaching its conclusions in this case, the court does not address the issues of whether the plaintiff or anyone was negligent in not recording the deeds between the complainant and her former husband, whether the plaintiff's interest in the property survived the former husband's release of his interest in 1990, or whether the plaintiff acted promptly enough in filing the release of his mortgage at the request of the complainant in 1993. Those issues were not decided by the defendant committee and are not before the court.
The plaintiff's appeal is sustained.