JOHN J. McCOOK *v.* URSULA M. COUTU
(11273)

O'CONNELL, FOTI and HEIMAN, Js.

Argued March 23—decision released June 22, 1993

*Raymond L. Baribeault, Jr.*, with whom, on the brief, was *Andrew J. Brand,* for the appellant (defendant).

*G. Russell Stewart III,* for the appellee (plaintiff).

O'CONNELL, J. The defendant appeals from the judgment of the trial court setting aside and nullifying two deeds she claimed granted her an interest in the plaintiff's residence. The defendant claims that the trial court improperly concluded that (1) the legal effect of the first deed was subsequently nullified, (2) there was no delivery of the second deed, (3) her recording of copies of the deeds did not constitute a valid recording of the deeds, (4) the deeds were of no legal effect, and (5) she did not satisfy her burden of proof on her counterclaim. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. The plaintiff and the defendant became romantically involved in 1978. In 1979, the defendant and her daughter moved in with the plaintiff at his residence at 117 Four Mile River Road in Old Lyme. Over the next several years, the parties periodically discussed marriage but did not marry.

During the course of the relationship, the defendant expressed her concern for financial security for herself and her daughter. Attempting to demonstrate his good faith, on April 19, 1984, the plaintiff instructed his attorney to prepare a quitclaim deed that would result in each party's owning a one-half interest with right of survivorship in his Four Mile River Road property. Instead of drafting the deed in accordance with the plaintiff's intent, however, the plaintiff's attorney mistakenly drafted the deed so that it conveyed the entire fee to the defendant. The defendant was not present when the deed was executed but later learned of its existence and that it purportedly granted her an interest in the property less than the entire fee.

The parties' testimony regarding delivery of the deed was entirely at odds. The plaintiff claimed that he was anticipating marriage to the defendant and that he intended to give her the deed after the marriage took place. He explained that because of this, he hid the deed when he arrived home from the attorney's office and never gave it to the defendant. The defendant contended that when the plaintiff arrived home he gave her the deed, told her not to record it and reassured her that she no longer would have to worry about having a home if something happened to him. The trial court did not make any factual findings on this issue.

Approximately two months later, the parties learned that the deed had been erroneously drafted. The plaintiff testified that he discovered the error himself, contacted his attorney and destroyed the deed. The defendant, on the other hand, maintained that she received a phone call from the plaintiff's attorney notifying her of the mistake and requesting that the deed be returned to him. She then told the plaintiff about the attorney's request and the plaintiff subsequently returned the deed to the attorney. The trial court reasoned that "no matter whose recitation of

facts the court believes, the unconditional return of the document to the drafting attorney or the destruction of the document by the plaintiff, the legal effect of the document was nullified. By each one's conduct the court infers that each assented to the fact the deed was of no effect."

Thereafter, on July 20, 1984, the plaintiff, again without the defendant's knowledge, had a second deed drawn and executed. This one was properly drafted to result in each party's owning the intended undivided one-half interest with right of survivorship. As was the case with the first deed, the parties' versions of the events following the drafting of the second deed were sharply contradictory. The plaintiff testified that he brought the deed home, hid it in a locked drawer to which only he had access and did not give the deed to the defendant. The defendant asserted that the plaintiff gave her the deed upon his arrival home with instructions not to record it. The trial court apparently believed the plaintiff and found that he did not deliver the deed to the defendant.

In 1985, the parties' relationship deteriorated and the defendant and her daughter moved out. At that time, the deed was in the plaintiff's possession and neither it nor the first deed had been recorded. The defendant maintained that the plaintiff was in possession of the deed because she had given it to him in exchange for his promise to pay her $50,000 for her share of the property. The plaintiff declared that he always had the deed and that no such agreement existed. The trial court, in its memorandum of decision, stated that "[t]his court cannot find that there ever was such an agreement, a meeting of the minds."

Subsequently, on June 20, 1985, the defendant went to the plaintiff's attorney's office and, without the plaintiff's consent, authorization or knowledge, obtained a

copy of the second deed and recorded it at the town clerk's office.[1] Two weeks later, in a similar manner, she obtained and recorded a copy of the first deed. Each deed was a photocopy made after execution by the plaintiff.

The plaintiff commenced this action seeking an order declaring him to be the rightful owner of the property. The defendant counterclaimed alleging that she was the rightful owner. She further claimed the existence of a confidential relationship and that the plaintiff held a one-half interest in the property in constructive trust for her. The trial court rendered judgment for the plaintiff on both the claim and the counterclaim. The defendant appealed.

The defendant first argues that the trial court improperly concluded that the legal effect of the first deed was nullified by the unconditional return of the deed by the plaintiff to his attorney. The defendant relies on *Botsford* v. *Morehouse,* 4 Conn. 550 (1823), for the proposition that once a deed has been delivered, neither the subsequent return of the deed to the grantor nor its destruction can undo the delivery. Whatever the merits of *Botsford* may be, it is clear that it is applicable only if there has first been a valid delivery and, here, the trial court made no findings on this issue. The court simply concluded that notwithstanding the issue of delivery, the legal effect of the deed was nullified. Consequently, we do not know from the memorandum of decision if there was a valid delivery.

The appellant has the burden of providing an adequate record for review. *Walton* v. *New Hartford,* 223 Conn. 155, 165, 612 A.2d 1153 (1992); see Practice

---

[1] Recording of the copies is irrelevant because the issues in this case concern the rights of only the immediate parties to the deeds. Recording affects only the rights of persons other than the grantor and grantee and their heirs. General Statutes § 47-10; *Gruss* v. *Miskinis,* 130 Conn. 367, 371, 34 A.2d 600 (1943); *French* v. *Gray,* 2 Conn. 92, 98 (1816).

Book § 4061. In the present case, the defendant did not seek an articulation on this issue.[2] Delivery is necessarily a question of fact; *Lomartira* v. *Lomartira,* 159 Conn. 558, 562, 271 A.2d 91 (1970); and we cannot find facts. *Robertson* v. *Nationwide Mutual Ins. Co.,* 20 Conn. App. 635, 637, 569 A.2d 565 (1990). This is particularly true where, as here, the factual findings are inextricably linked to the credibility of the witnesses. Accordingly, we do not review this claim.

The defendant next claims that the trial court improperly found that the plaintiff had proved by clear and convincing evidence that there was no delivery of the second deed. Delivery of a deed coupled with intent by the grantor to pass title is necessary for a valid conveyance. *Lomartira* v. *Lomartira,* supra, 561. "The delivery of a deed includes not only an act by which the grantor parts with the possession of it, but also a concurring intent on the part of the grantor that it shall vest the title in the grantee." *Costello* v. *Costello,* 136 Conn. 611, 615–16, 73 A.2d 333 (1950). Both elements involve questions of fact for the trier of fact. Id., 616; see also *Lomartira* v. *Lomartira,* supra, 562 ("delivery always depends upon the intent of the grantor as manifested by his words and acts, and it is necessarily a question of fact").

The party asserting nondelivery must prove it by clear and convincing evidence. *Lomartira* v. *Lomartira,* supra; *Bell* v. *Bloom,* 146 Conn. 307, 309, 150 A.2d 300 (1959). In the present case, the trial court expressly concluded that the plaintiff satisfied this burden. In arriving at that conclusion, the trial court heard diametrically opposing testimony from the parties con-

[2] The defendant did seek articulation of other specific issues. The trial court denied the motion and she sought review in this court. We granted her motion for review and directed the trial court to respond to the defendant's questions.

cerning the possession and intent elements of delivery and ultimately believed the plaintiff. Indeed, the trial court, in its memorandum of decision, noted that "[t]here is conflicting evidence from the defendant especially as to what happened to deed number two. Her courtroom testimony is not consistent with prior deposition testimony which comes to the court as an exhibit." The trier of fact is the final judge of the credibility of witnesses. *R. Zemper & Associates* v. *Scozzafava*, 28 Conn. App. 557, 561, 611 A.2d 449 (1992). This court cannot find facts but can only review the findings to determine whether they legally, logically and reasonably could have been found by the trier. Id. In the present case, our review of the record satisfies us that the court properly found that there was no delivery of the second deed.

In light of our disposition of the first two claims, we do not reach the defendant's third claim. Moreover, the defendant's fourth claim is subsumed under the first two claims and requires no additional discussion.

The defendant finally claims that the trial court improperly concluded that she had failed to sustain her burden of proof on her counterclaim, which alleged the existence of a confidential relationship and constructive trust. The memorandum of decision states only that the defendant failed to prove the allegations of the counterclaim. No factual findings accompany this determination and the defendant did not seek articulation of its factual basis. Because the appellant has the burden of providing an adequate record for review; *Walton* v. *New Hartford,* supra; and she has not done so here, we do not review this claim. Rather, "we presume that the trial court, in rendering its judgment in favor of the [plaintiff], undertook the proper analysis of the law and the facts." *S & S Tobacco & Candy Co.* v.

*Greater New York Mutual Ins. Co.,* 224 Conn. 313, 321–22, 617 A.2d 1388 (1992).

The judgment is affirmed.

In this opinion the other judges concurred.