[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT
The parties have filed cross motion for summary judgment. This action arises out of allegations that a child residing in leased premises was exposed to dangerous and toxic levels of lead poisoning. The suit brought in behalf of the child was brought against James Tierney who the complaint alleges "was the owner of record, landlord, and otherwise in control" of the subject premises.
The complaint is in several counts and alleges common law theories of liability and allegations of liability based on violations of various state statutes and local ordinances. The first count is based on a claim the defendant leased the premises, failed to properly inspect them and delead them in violation of these laws. The second count makes various allegations of negligence involving failure to warn, inspect and delead the premises and allowing the complainants to remain in the premises despite their condition. The third count refers to the statutory violations to make a claim of absolute nuisance. The fourth count alleges the condition of the premises was so dangerous as to constitute an abnormally dangerous activity by the defendant leasing the premises.
The fifth count is based on the existence and breach of an implied warranty of habitability. Failure to comply with this duty is alleged to be based on non-compliance with statutory and common law requirements. The sixth count is based on common law allegations of a breach by the defendant of his obligation under the lease agreement to deliver and provide the plaintiff child with quiet and peaceful possession and enjoyment of the premises. It claims the defendant received notice of the condition of the premises from the local health director but wilfully and wantonly failed to deliver and provide the complainants with peaceful possession and enjoyment and thus the child was exposed to lead CT Page 1331-FFFF poisoning.
The seventh count alleges again that the defendant received notice of the dangerous condition of the premises but despite such notice failed to take steps to ensure his tenants weren't exposed to dangerous lead levels. The eighth count refers to all the other counts and alleges a violation of the Connecticut Unfair Trade Practices Act (§ 42-110a et seq.).
The defendant's motion for summary judgment is based on the factual allegations in two affidavits submitted by the defendant and his son Kevin Tierney.
The defendant James Tierney denies being the owner of the subject premises. He notes the sole indication that he is owner is a quitclaim deed filed by his son on the New Haven land records. He says he never had or claimed any interest in the property, never paid for it, never visited it or exercised any control over it. He never received a deed no did he ever wish to. His son in 1990 or 1991 asked him if he'd be willing to take title because the son was unable to keep up the mortgage payments but he declined the offer. He denies any knowledge of the quitclaim until this law suit was brought. His son then told him he had quitclaimed the property to him.
The son Kevin Tierney also submitted an affidavit. He admits becoming the owner of the subject premises in 1990. Due to financial difficulties he says he broached the idea of transferring the property to his father but the father was not interested and did not consent or express any willingness to take title.
Despite this the son admits he filed a quitclaim deed purporting to convey title to these premises to his father, the defendant. He hoped to eventually persuade his father to take the property and refinance it at a lower rate so he could buy it back when his financial situation improved.
The son, Kevin, says he continued to act as owner, receiving all rents and paying all bills and taxes and seeing to all repairs. He admits he never told his father that the quitclaim deed had been filed. He acknowledges that he exercised dominion or control over the property and that his father never had any involvement in the acquisition, management, or maintenance of the property.
The plaintiffs submitted no counter affidavits to contradict CT Page 1331-GGGG the allegations of the affidavits submitted by the defendant, James Tierney and Kevin Tierney; they did submit a copy of the quitclaim deed. It notes the transfer of the premises by quitclaim deed on June 3, 1991. There is nothing before the court to indicate that the defendant exercised any control over the property or maintained it or entered into any lease arrangements regarding the property or received any notices regarding the property, visited the property or actually knew that the son, Kevin Tierney, transferred the property to him in June of 1991. There is nothing to indicate that in regards to any activity concerning the property that the son acted as the agent of the defendant. In fact the contrary is the case; Kevin Tierney managed and controlled the premises and acted as owner.
(1.)
Both sides presume that the resolution of this case revolves around whether it can be established as a matter of law that James Tierney is or is not the owner of the subject premises. The defendant claims he is not, so that summary judgment should be granted. The plaintiffs have filed a cross motion for summary judgment asking that the court find as a matter of law that James Tierney is the owner.
Both sides agree that transfer of ownership by deed from one owner to another can be established only if there has been delivery of the deed to and acceptance by the party who is alleged to be the subsequent owner or holder of title. Many cases are cited which define what delivery is under the law and what acceptance is. The cases cited by the defendant on "delivery" are Patalano v. Chabot,139 Conn. 356 (1952), Dennen Searle, 149 Conn. 126 (1961),Lomartira v. Lomartira, 159 Conn. 558 (1970), Wiley v. LondonLancashire Fire Ins. Co., 89 Conn. 35 (1914), Moore v. Giles,49 Conn. 570 (1882), Russo v. Stepp, 2 Conn. App. 4 (1984), the plaintiff also relies on some of these cases and also refers toSweeney v. Sweeney, 126 Conn. 391 (1940), McCook v. Coutu, 31 Conn. App. 696
(1993), Trumbull v. Hewitt, 62 Conn. 448 (1893), D'Addariov. D'Addario, 6 CSCR 463 (1991).
On the issue of acceptance the defendant cites Gagner v.Petrauskas, 112 Conn. 307 (1930), Moore v. Giles, 49 Conn. 570
(1882), Martin v. Uvalde Savings Loan Assn., 773 S.W.2d 808 (Tex 1989), Blankenship v. Myers, 544 P.2d 314 (Id. 1975). The plaintiff refers to D'Addario and the Sweeney case, Hamilton v.U.S., 806 F. Sup. 326 (D.Conn., 1992), Halleck v. Halleck,
CT Page 1331-HHHH337 P.2d 330 (1959).
In the Connecticut cases title came upon the following contexts: Moore v. Giles, supra involved a suit brought to remove a cloud from a title, Wiley v. London Lancashire Fire Ins. Co.,
supra. was an action to recover loss on an insurance policy where the company defended on the grounds that the plaintiff transferred title to another thus voiding coverage according to the terms of the policy, Gagner v. Petrauskas, supra was an action to recover damages against a defendant for failure to pay a mortgage; the plaintiffs claimed to have conveyed the property to the defendant by a warranty deed, Patalano v. Chabot, supra centered on the issue of transfer of ownership by deed because the action was for an injunction restraining the defendant from committing an alleged trespass, Dennen v. Searle, supra was an action to quiet title, as was Lomartira v. Lomartira, supra, Russo v. Stepp was an action similar to Patalano v. Chabot, supra, McCook v. Coutu, supra was an action brought to declare null and void an alleged Fraudulent conveyance of certain property of the plaintiff.
As to the non-Connecticut cases cited by the parties, Halleckv. Halleck, supra had to deal with the transfer of ownership by deed since it was an action of ejectment brought by a son against his deceased father's second wife concerning land which the father had conveyed to a third person who in turn conveyed it back to the father and son not as tenants in common but with right of survivorship, Blankenship v. Myers, supra seems humdrum in comparison because it was an action by vendors against purchasers and transferees to set aside purchaser's interest in property as in Fraud of creditors or alternatively to assert the vendor's lien against the property, Martin v. Uvalde Savings Loan Assn., supra was a suit by a mortgagee to recover deficiency after property was sold at a trustee's sale, the issue revolved around determining whether the mortgagor's attempt to convey the property to the mortgagee was ineffective where the latter refused to accept the deed, Hamilton v. U.S., supra had to deal with the transfer of title because the plaintiff brought an action against the government alleging it had made a wrongful levy on property owned by the plaintiff to satisfy delinquent taxes owed by another taxpayer.
All of these cases fall into two broad categories. Most of them involve disputes between parties as to who had legal title to land and courts had to determine whether a deed, purporting to transfer ownership, was properly "delivered" and "accepted". Some CT Page 1331-IIII cases required courts to make the latter determination because a party claiming to be an owner of land sought injunctive or remedial relief against a person or government entity that didn't advance a competing ownership interest but somehow was claimed to have invaded the plaintiff's alleged interest in and right to possess the land.
None of these cases deal directly with the question of who actually is to be held responsible if an innocent party, not claiming an interest in the property or allegedly invading an interest in the property, is injured by coming on contact with a dangerous condition on the property. That is a separate consideration from the transfer of title question which the court will discuss later in this opinion.
(2.)
Even assuming title passed to the father because the son, without the father's knowledge, placed a quitclaim deed on the land records which purportedly transferred the property for "love and affection", what does that say about the liability of the father on the various, causes of action advanced by the plaintiff.
As said in Connecticut Law of Torts, 3d ed, Wright, Fitzgerald, Ankerman § 46, page 108 which summarizes our case law:
 . . ."it is the possession of land that imposes the liability for injuries, rather than the ownership of the land. The possessor is ordinarily the party responsible for the reason that the person in possession is in a position of control and is best able to prevent harm."
See also Mack v. Clinch, 166 Conn. 295, 296 (1974), Ziulkowski v.Kolodziej, 119 Conn. 230, 232-233 (1934).
This general principle is reflected in many areas including for example landlord-tenant law. For example even where the status of a party as a landlord or owner is not contested, if the tenant is injured the basis of the landlord's liability is "negligence in concealing from the tenant a secret defect in the premises",Gallagher v. Button, 73 Conn. 172, 177 (1900), cf the recent case of Gore v. People's Savings Bank, 235 Conn. 360 (1995). Thus the landlord's liability is based upon some violation of a standard of CT Page 1331-JJJJ care that can be fairly imposed on the landlord not the fact of ownership of the premises. This is the basis for the rule that a landlord is not liable to a tenant or others coming upon the property, if a defect causing injury was both latent and unknown to the landlord, Masterson v. Atherton, 149 Conn. 302, 307 (1962),Shegda v. Hartford-Connecticut Trust Co., 131 Conn. 186, 191-192
(1944), Gallagher v. Button, 73 Conn. 172, 177 (1900), Ayala v. B B Realty Co., 32 Conn. Sup. 58, 61 (1974), Restatement 2d Torts § 358.
It would be contrary to this whole body of law and the reasoning behind to hold that a person in the defendant's position could be held liable to people injured by contact with dangerous conditions on the property the uncontested fact affidavits establish that the defendant had no possession or control over the subject premises, had no knowledge that title was purportedly transferred to him by quitclaim deed. Not only was the quitclaim deed put on the land records without his knowledge, such action was taken as a subterfuge. Given these facts, no matter what the status of the title, it cannot fairly be concluded that the defendant can be held liable on a negligence standard of care theory. The negligence theory in the second count must fail.
A similar analysis applies to the absolute nuisance claim set forth in the third count. The basis of such a claim has been stated as follows: "It is the duty of every person to make a reasonable use of his (sic) own property so as to occasion no unnecessary damage or annoyance to his (sic) neighbor. If the use is unreasonable, the law will hold him (sic) responsible", Nailorv. C.W. Blakeslee Sons, Inc., 117 Conn. 241, 245 (1933), Nair v.Thaw, 156 Conn. 445, 452 (1968). Absolute nuisance, is a nuisance created by intention not to commit a wrong but to create the condition out of which the nuisance arises, DeLahunta v. Waterbury,134 Conn. 630, 634 (1948). If the nuisance is so created, the cases hold that the person who intentionally created it is responsible in damages. How can it be said based on the uncontroverted facts before me that this defendant is responsible in absolute nuisance? He intentionally created no condition out: of which danger might have arisen, he did not even know of any such condition.
The fourth count claims the minor child suffered injury as a result of the defendant engaging in an abnormally dangerous activity leasing the property despite the fact that it contained high toxic levels of lead. There is nothing offered by way of CT Page 1331-KKKK affidavit to indicate the defendant "leased" the apartment to the plaintiffs or that his son acted as the father's agent in leasing the premises. The existence or non-existence of legal title has nothing to do with the underpinnings of the doctrine of strict liability for ultrahazardous activity. In Starkel v. Edward BalfCo., 142 Conn. 336, 341 (1955) the court said:
 "An individual who, to attain a lawful objective uses and intrinsically dangerous means in such a way as necessarily or obviously to expose the person of another to the danger of probable injury is liable if such injury results; even though he exercises all proper care."
Restatement 2d Torts § 519 comment (d) and § 520 comment (d) indicates that the reason for this rule is that if you engage in activity or allow a condition to exist which is considered ultrahazardous for your own financial gain or even for your private use or pleasure you must bear the cost of injury to another caused by the condition even if you used the utmost care to avoid injury. The person on whom this form of strict liability is imposed must have created the condition or have engaged in the activity for his or her own use or benefit if liability is to be imposed for the condition. Let's assume a hypothetical: let's assume (1) A owns certain property, (2) let's assume further that unbeknown to A, B goes on the property of A and sets off a dynamite charge for some purpose of B — say to ascertain the geological formation under A's land so as to indicate the extent of an oil deposit on B's neighboring land (3) let's assume due to the blast C is injured. Liability couldn't be imposed on A because A did not create the condition or know of its existence. As the Restatement says in § 519(d) liability "is founded upon a policy of the law that imposes upon anyone who for his (sic) own purposes creates an abnormal risk of harm to his (sic) neighbors the responsibility of relieving against the harm when it does in fact occur." See Green v. Ensign Bickford Co.,25 Conn. App. 479, 485 et seq which cites the Restatement extensively, also see Whitman Hotel Corp. v. Elliot WatrousEng. Co., 137 Conn. 562, 565 (1951). Here the defendant did not lease the property, control or manage it for his own purposes. These facts are uncontroverted as is the defendant's claim he in fact did not know the property had been quitclaimed to him.
The seventh count of the revised complaint alleges that the CT Page 1331-LLLL defendant received notice of the dangerous condition with respect to lead paint from governmental officials but despite receiving such notice took no steps to correct the condition. As a result of the defendant's "willful, wanton, and/or reckless conduct" the plaintiff child suffered various serious injuries. The plaintiff's opposition to the summary judgment motion is based solely on a claimed transfer of legal title from the son to his father, the defendant. No affidavits, depositions, or documents have been presented to the court to support any allegation of intentional or reckless conduct by the defendant with regard to the condition of the premises. That is, apart from the question transfer of legal title nothing has been submitted to indicate the defendant received notice of anything regarding the premises or was aware of any conditions on the premises that might have led to the serious injuries this child might have suffered. This is not surprising since as noted several times before there is nothing to indicate the father had any idea his son quitclaimed the property to him until he was sued and became a defendant.
The fifth and sixth count are based respectively on an allegation that in leasing the premises to the plaintiffs the defendant impliedly warranted their habitability (Fifth Count) and that the defendant agreed to provide the plaintiff mother with quiet and peaceful possession and enjoyment of the premises (sixth count).
These contractural or quasi-contractural claims have no basis in the facts presented on this motion. There is no evidence the defendant leased the property to the plaintiff or that his son was acting as the defendant's agent in leasing the property to the plaintiff. Even if title was passed to the father there is nothing to indicate the son acted within the scope of any agency on leasing the apartment, informed his principal of the lease or acted with apparent authority in regards to the leasing or maintaining of the property.
Furthermore as regards the implied warranty of habitability the court in Gore at pages 235 Conn. 383-385 refers to the Restatement 2d Property and quotes from Section 17.6 which says the landlord is liable only for conditions of which the landlord is aware or of which the landlord could have known of in the exercise of reasonable care. Even assuming the defendant could be defined as a "landlord" how can it be said he's liable under the last mentioned standard in a situation where property is quitclaimed to him by subterfuge during the period when liability is said to have CT Page 1331-MMMM attached and there is no evidence submitted by the plaintiffs to indicate he was aware that his son had quitclaimed the property to him.
The first count is based on the alleged violation of various state statutes and city ordinances by the defendant. Failure by the defendant to comply with these various enactments is deemed to be wrongful conduct on his part.
Section 21a-82 CGSA can't apply to the defendant since it is directed at any person who uses lead paint on an interior surface of an apartment. There has been nothing presented by way of affidavit to indicate to the defendant so acted.
Section 19a-111c provides of the removal of lead paint by the "owner" of any dwelling. Such an "owner" must "abate and manage" this dangerous condition "consistent with regulations adopted pursuant to this section. Section 19a-111(c) can't be rationally interpreted to impose the conditions set forth in its language on someone in the defendant's position to whom property quitclaimed without his knowledge and by a veritable subterfuge. Statutes must be given a just and reasonable interpretation and must be regarded as intending a constitutional result Broadley v. Board ofEducation, 229 Conn. 1, 6-7 (1994), Sanzone v. Board of PoliceCommissioners, 219 Conn. 179, 187 (1991). Statutes shouldn't be interpreted in such a way as to give an absurd result, State v.Campbell, 180 Conn. 557, 563 (1980). This statute was aimed at "owners", that is a person or persons who knowingly and willingly had ownership, control or possession of property, otherwise how could an individual be constitutionally subject to state regulations or control and have the expense of complying with regulations imposed on him or her? Failure to arrive at such a result in the interpretation of this and the other statutes and ordinances alluded to in the complaint would allow the truly responsible party to avoid, delay or escape the imposition of these vital regulations and liabilities — all he or she could have to do is quitclaim his or her interest in premises subject to the statutes. Such an interpretation would defeat the very purpose of the regulatory scheme.
Sections 47a-1 et seq. of the general statutes[1] impose various obligations on landlords, and tenants which could provide the basis for a negligence per se claim against a landlord due to the existence of lead paint. A landlord is defined in § 47a-1(d) and includes an "owner" and subsection (c) defines an owner CT Page 1331-NNNN as a person in whom is vested "all or part of the legal title to property. The statute doesn't define an "owner" as one who has legal title, it is a person in whom legal title is "vested". If this is accepted as creating an ambiguity then Broadley, Sanzone, and Campbell can be used as authority to avoid giving an unjust, bizarre and possibly unconstitutional reading to a statutory requirement that would apply to someone in the defendant's position. But even if the defendant is unambiguously defined as a "landlord" under the statute, to impose by this statute negligence per se requirements on this defendant in the common law courts would present serious constitutional due process problems in this unique factual setting. From the previous decision of the common law theories of liability there seems to be no rational or historical basis to warrant the notion that liability be imposed here. If a trial court held that liability should not be imposed for due process reasons in this type of case it would affect only a very limited number of prospective defendants — those to whom unknown to them have property quitclaimed to their name. Where the uncontroverted facts establish the transfer was unknown to such a defendant what justifiable state interest is served when to impose liability on such a defendant would condone a complete departure from long standing common law principles. In fact to recognize such a possibility might defeat the very ameliorative purpose the legislation sought to achieve — irresponsible and wrong doing owners and landlords could surreptitiously transfer their problems, at least in the short run, to others.
In fact without necessarily relying on a constitutional argument I believe the facts of this case also require that the defendant not be found to be an "owner" based on a claim that legal title in fact passed to him. I believe the resolution of the issue regarding title is more crucial to the analysis of this first count since some of the statutes and ordinances mention the word "owner" and define "owner" as one who holds "legal title". The parties believe resolution of their motions as to all counts depends on whether title has passed to the defendant. I do not necessarily agree with this as I have indicated but even if I am incorrect in this assumption I conclude the defendant should also prevail because title has not passed to him.
As noted in the beginning of this decision a deed transfers title if there has been delivery and acceptance. I will discuss the concept of acceptance. CT Page 1331-OOOO
The cases do not support the notion that there has been "acceptance" of the deed by the defendant if one closely examines the principles on which the cases and the notion of implied acceptance are based. Certainly there is general language in the cases to the effect that in our state there is a presumption of acceptance where the deed is beneficial. Thus the grantee's acceptance in the ordinary course is unnecessary to vest title in the grantee, Halleck v. Halleck, 337 P.2d 330, 336 (On. 1959). One court has gone so far as to say that: "If it should occur that the vesting of title on the grantee is not beneficial to him or for some reason he does not wish to retain it he may disclaim and revest title in the grantor," D'Addario v. D'Addario, 6 CSCR 463,465 (1991).
The reason for the rule is the rejection of the notion that a deed is a form of contract and that therefore acceptance is necessary to the formation of the contract. Such a result is mandated if the right of a person to freely transfer his or her property especially within a family is to be preserved. As theHalleck court points out at 337 P.2d page 336: "title may be passed to a grantee who because of nonage or insanity is incapable of acceptance." It would be intolerable if outsiders in such a situation could challenge the transfer of title based on some notion that there has been no "acceptance" (in contract terms) of the deed and thus no transfer of title.
But the reason for the presumption of acceptance doctrine shouldn't be allowed to go beyond the purposes for which it was created and work injustices of its own.
Acceptance is only presumed where the deed creates no obligation or burden on the grantee McGowan v. Lockwood, 176 P. 298,300 (Colo, 1918). In Merrills v. Swift, 18 Conn. 256, 261 (1847) the court said acceptance is presumed "where the deed is beneficial to the" grantee. But "where a deed imposes an obligation upon or creates any liability against a grantee an acceptance cannot rest upon a mere presumption but must be of an affirmative character",Seibert v. Seibert, 41 N.E.2d 544, 547 (Ill, 1942). In other words for a presumption to operate there must be a factual predicate if application of the presumption is to make sense. County of Worthv. Jorgensen, 253 N.W.2d 575, 578 (1977) nicely focuses the law in this area; there the court said:
 "A grantor cannot unilaterally force title upon a grantee or, as has been stated, an CT Page 1331-PPPP estate cannot be thrust upon a person against his (sic) will. . . . Under certain circumstances, the law presumes acceptance even when the grantee is unaware of the grant. Such is the case where the grant is beneficial to the grantee and not onerous;. . . . We need not a tarry to inquire whether the presumption in such instances is rebuttable or is of the so-called conclusive variety, for the facts of this case do not bring it within the implied acceptance cases. Jorgensen (purported grantee) is not an infant or of unsound mind and the county's attempted grant was not beneficial to him. Manifestly the property is a white elephant, and someone will have the considerable burden of razing or reconstructing the building."
Here the very character and allegations of the plaintiff's revised complaint establish any transfer of title was not beneficial to the defendant; the man is being sued for the very condition of the premises which was purportedly transferred to him. The defendant is entitled to summary judgment on the first through the seventh count based both on the ground that title was not passed to him and for the reasons previously set forth which are independent of the transfer of title issue.
The eighth count is a CUPTA claim under § 42-110a et seq and is by its own allegations derivative of the "course of conduct" set forth in the first seven counts so that the defendant is entitled to summary judgment on that count. The plaintiff's cross motion for summary judgment is necessarily denied as the court grants the defendant's motion for summary judgment.
Thomas Corradino, Judge.